UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION


CAMERON ROBINSON                                                                                    PLAINTIFF

V.                                                                      CIVIL ACTION NO.: 1:17-cv-55-SA-DAS

CITY OF TUPELO, MISSISSIPPI,
LEE COUNTY, MISSISSIPPI,
OFFICER KAITLYN WEEKS, *in her individual capacity*,
CAPTAIN TIM BELL, *in his official and individual capacities for
injunctive and declaratory relief only*                                                         DEFENDANTS

MEMORANDUM OPINION


This matter arises on Defendant Weeks' Motion for Qualified Immunity and Defendant Lee County's Motion for Judgment on the Pleadings [66, 69]. Both motions are fully briefed and ripe for review.

*Facts and Procedural History*

On December 5, 2016, while patrolling on Beach Springs Road in Tupelo, Mississippi, Tupelo Police Officer Wisam Guerriere observed several items were hanging from the rearview mirror of a vehicle, potentially obstructing the driver's view. Officer Guerriere radioed for backup. Once backup Officer Kaitlyn Weeks arrived, Officer Guerriere initiated a routine traffic stop. Officer Guerriere approached the driver, Ashley Weichbrodt, while Officer Weeks approached the front passenger, Plaintiff Cameron Robinson. Though there is some dispute as to exactly what follows, Robinson alleges that after providing Officer Weeks with his identification, he rolled his window up, because he wanted to shield his sick children from the inclement weather.

Robinson was frustrated at being pulled over. He reports that Officer Weeks knocked on the window, and Robinson rolled it down long enough to complain about being pulled over, and

then rolled it up again. After Robinson did not comply, Weeks opened the passenger door, ordered Robinson out of the vehicle, and handcuffed him with Officer Guerriere's help. Officer Guerriere then took Robinson to her police car, but she purportedly told him that she was not arresting him. Officer Weeks later informed Robinson that he was, indeed, under arrest for rolling up his window.

Upon arrival at the Lee County Jail, a Lee County correctional officer took $150.00 in cash from Robinson's person. His bail was set at $425.00, which included a $25.00 "release fee." After his release, Robinson never received a refund for the "release fee."

Robinson filed suit, alleging in his Amended Complaint that Officer Kaitlyn Weeks improperly detained and arrested him in violation of the Fourth and First Amendment. Further, Robinson requests injunctive relief as to the City of Tupelo and Defendant Captain Tim Bell, arguing that City and County ticketing policies are unlawful and discriminatory, and that County and City agents often misappropriate the personal cash and bonds taken from arrestees. Finally, Robinson alleges that the Mississippi's statute requiring Sheriffs to charge inmates a $25.00 fee upon release from jail is unconstitutional.

In response, Officer Weeks filed a Motion for Summary Judgment, arguing that she is entitled to qualified immunity, and Lee County filed a Motion for Judgment on the Pleadings. Lee County argues that it may not be held liable under Section 1983 for following a mandatory state statute that requires them to assess a $25.00 fee to inmates upon release. The City has not moved for summary adjudication regarding allegations made against it, specifically that it denied Plaintiff due process, that it maintains discriminatory customs, that it improperly requires officers to meet ticketing requirements, and that it requires passengers of stopped vehicles to provide identification under circumstances that are not suspicious. Thus, the Court merely examines the claims made against individual Defendant Weeks and the County, as follows.

*Summary Judgment Standard*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

*Discussion and Analysis*

In response to Plaintiff's allegations, Defendant Weeks asserts that she is entitled to qualified immunity. "A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense . . . [t]he plaintiff bears the burden of negating the

qualified immunity, but all inferences are drawn in his favor." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). In assessing a claim of qualified immunity, courts apply the two pronged analysis established in *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), but the court may address the prongs in any order. *Pearson* v. *Callahan*, 555 U.S. 223, 225, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

One prong asks, "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). The other prong asks "whether the right was clearly established." *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Regarding the first prong, Plaintiff alleges that individual Defendant Weeks improperly detained and arrested him in violation of the Fourth and First Amendment.

### A. The Initial Seizure

Plaintiff first argues that Defendant Weeks had no authority to approach him and request his identification. Because traffic stops are considered more similar to investigative detentions than formal arrests, Courts analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); s*ee also Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). This standard requires the following two–tiered reasonable suspicion inquiry: 1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place. *United States v. Grant*, 349 F.3d

192, 196 (5th Cir. 2003) (citing *Terry*, 392 U.S. at 19–20, 88 S. Ct. 1868); *see also United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993).[1]

For the duration of a traffic stop, a police officer effectively seizes "everyone in the vehicle," including the driver and all passengers. *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). Accordingly, as to passengers in a traffic-stop setting, the first *Terry* condition —a lawful investigatory stop— is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. "The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Maryland v. Wilson*, 519 U.S. 408, 414–15, 117 S. Ct. 882, 886, 137 L. Ed. 2d 41 (1997). Moreover, an officer making a traffic stop may order passengers to get out of the car pending completion of the stop. *Id*.

Here, the first prong of the *Terry* analysis is satisfied, as Plaintiffs do not dispute whether the initiation of the traffic stop was warranted. *Brendlin*, 551 U.S. at 255, 127 S. Ct. 2400. Furthermore, it was reasonable and lawful for Officer Weeks to require Plaintiff to present identification and exit the vehicle. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991) ("even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification . . ."); *see also Muehler v. Mena*, 544 U.S. 93, 100, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005); *Wilson*, 519 U.S at 414–15, 117 S. Ct. 882.

---

[1] After summary judgment briefing was closed, the Plaintiff filed a Motion to Consider Additional Authority [83], requesting that the Court consider the recently decided Fifth Circuit case, *Johnson v. Thibodaux City*, 887 F.3d 726 (5th Cir. 2018). The Court is aware of this case and the underlying authorities upon which it was decided. *Johnson* does present a factual situation that is at least somewhat analogous to facts presented in the instant case, and the Court's analysis and decision below is consistent with the state of the law as articulated by the Fifth Circuit in *Johnson*. The Plaintiff's Motion to Consider Additional Authority [83] is therefore granted.

Traffic stops are "especially fraught with danger to police officers," and therefore, the Court does not doubt Defendant Weeks' decision to take precautions by requiring Plaintiff to exit the vehicle, given her statement that she could not see his hands. *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). However, when officers suspect criminal behavior, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion. *Shabazz*, 993 F.2d at 436.

## B. *Plaintiff's Arrest*

Under the Fourth Amendment, an arrest must be based on probable cause, which exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).

Though there is some dispute about whether Plaintiff refused to roll the window down or rolled the window up without permission, Defendant Weeks testified that she arrested Plaintiff after he handed his identification to her, but then rolled his window back up. Weeks stated, "I wasn't done with my talking, asking him, you know, why he couldn't keep his hands still, why – different questions like that. So he rolled the window back up. So I knocked again and asked him to roll it down. He refused and started looking away from me. So at this time I helped him exit the vehicle, placed him in handcuffs . . . ." Defendant Weeks also testified that Plaintiff continuously expressed disagreement with the officers' actions. She said that Plaintiff "basically was telling me that as a passenger in the vehicle I had no right to I.D. him or talk to him in any way." Defendant Weeks

6

argues that she was concerned about officer safety, and when Plaintiff refused to roll down his window and behaved insubordinately, there was probable cause to arrest him for disorderly conduct.

In Mississippi, the elements of the crime of disorderly conduct are (1) breach of the peace and (2) failure to obey the lawful command of a law enforcement officer. MISS. CODE ANN. § 97–35–7(1) (2006); *see also Crosby v. Bell*, No. 5:14-CV-49-DCB-MTP, 2015 WL 4496489, at *5 (S.D. Miss. July 23, 2015) (collecting Mississippi cases). Generally, in order for there to be a true "breach of the peace," an arrestee must have indicated some level of threat. *Id*. Plaintiff asserts that Defendant Weeks merely arrested him because he was speaking impudently, and that he gave no indication of threat. Thus, Plaintiff's second argument is that Defendant Weeks violated his Fourth and First Amendment rights by arresting him.

Indeed, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); *see also Brendle v. City of Houston*, 759 So. 2d 1274, 1283–84 (Miss. Ct. App. 2000) (en banc) (holding that curse words addressed to a police officer were not fighting words punishable under Mississippi profanity statute). Therefore, an arrest made pursuant to mere verbal insubordination does not provide the actual probable cause necessary under the Fourth Amendment, and may be in violation of Plaintiff's First Amendment rights. *Hill*, 482 U.S. at 462-3, 107 S. Ct. 2502.

In addition, there is conflicting evidence in the record as to the connection between the initial stop and Weeks' extended interaction with the Plaintiff passenger after the Plaintiff presented identification. An officer's actions after a legitimate stop must be "reasonably related to the circumstances that justified the stop, or to dispel[ ] his reasonable suspicion [that] developed during

the stop." *United States v. Brigham*, 382 F.3d 500, 506-7 (5th Cir. 2004). Officers are not permitted to continue a detention solely to obtain identification. *See Brown v. Texas*, 443 U.S. 47, 52–53, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979). Instead, they must have developed "reasonable suspicion, supported by articulable facts" during the justified portion of the stop or must have made the request because of "the circumstances that justified the stop." *Brigham*, 382 F.3d at 507.

Construing the facts in a light most favorable to the Plaintiff, the Court finds that a reasonable jury could conclude that Weeks' continued actions, after identification of the Plaintiff, extended longer than necessary to effectuate the purpose of the stop, without further reasonable suspicion, supported by articulable facts. *See id*.

Officers are entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest. *See Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391–92 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing *Crostley v. Lamar Cty.*, 717 F.3d 410, 422–23 (5th Cir. 2013); *see also Cooper v. City of La Porte Police Dep't*, 608 F. App'x. 195, 199 (5th Cir. 2015). Even though Plaintiff may have failed to dispel Officer Weeks' concerns regarding safety, an officer would have been objectively unreasonable in believing that there was probable cause for arresting Plaintiff on the basis of verbal insubordination alone. There are genuine issues of material fact as to whether the continuation of the stop after the Plaintiff was identified was objectively reasonable. In addition, the Plaintiff has highlighted a question of fact as to whether Defendant Weeks' actions were objectively reasonable as to the arrest. Accordingly, Officer Weeks is not entitled to qualified immunity on Plaintiff's Fourth and First Amendment claims.

## C. Equal Protection

Next, Plaintiff argues that Defendant Weeks was improperly motivated to arrest him because he is black. Plaintiff argues that his arrest was contrary to procedures used when dealing with white persons. Plaintiff intends to prove disparate treatment by submitting an affidavit from former Tupelo Police Officer Brandon Garrett. While Garrett does not suggest that he has any personal knowledge of Plaintiff's arrest, he found it "upsetting," when officers were made to apologize to a white banker for a "failure to comply" arrest sometime in 2016. Furthermore, Sergeant Tiffany Gilleylen submitted an affidavit expressing her opinion that Officer Weeks is racist, and that Tupelo City policy is discriminatory because it causes disparate impacts on the low-income, black communities.

The Equal Protection Clause directs that persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982). "To state a claim under the Equal Protection Clause, a Section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999) (citations omitted). For example, the Fifth Circuit has held that a police officer's use of racial epithets, combined with harassment or other unlawful actions, may show an equal-protection violation. *See, e.g, Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003).

In the case at bar, while Plaintiff has submitted an affidavit stating that Defendant Weeks is racist, he has not produced evidence that any differential treatment he received was based on his race. He merely argues that it may be inferred from the lack of "legitimate" reasons for the arrest. Moreover, Plaintiff has not shown that Defendant Weeks was involved in the comparative incident involving the white banker. Accordingly, Plaintiff has failed to produce competent summary

judgment evidence that tends to prove a constitutional violation occurred. *See Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence"). Thus, Defendant Weeks is protected by qualified immunity as to this claim.

*Lee County's Motion for Judgment on the Pleadings*

Defendant Lee County filed its Motion for Judgment on the Pleadings, arguing that it should not be held liable for charging Plaintiff the $25.00 fee because it was merely following state statute. Indeed, Mississippi law requires that the sheriff of the various counties charge a $25.00 fee for taking bonds. MISS. CODE ANN. § 25-7-19(1)(d). Under the statute, Sheriffs lack the discretion to refuse to assess the fee, and "shall be guilty of a misdemeanor in office" for failure to do so. MISS. CODE ANN. § 25-7-19(3).

On this basis, Defendant Lee County argues that Plaintiff's allegations do not meet the standard articulated by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Under *Monell*, to state a claim against a municipal entity for both monetary and equitable relief, plaintiffs must allege the existence of (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

As to the second element, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority." *Valle*, 613 F.3d at 542 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). Here, the custom is not attributable to Lee County,

because Lee County does not grant the Sheriff authority to enforce statute; state statute mandates it. MISS. CODE ANN. § 25-7-19.

To satisfy the "moving force" element, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Here, Plaintiff has not identified any policy or custom attributable to Lee County that was the moving force behind the alleged violation. Though generally the Sheriff acts as a policymaker within the County, and often the Sheriff's actions may justifiably be considered to constitute county policy under *Monell*, the Sheriff's actions here are more fairly "characterized as the effectuation of the policy of the State" of Mississippi. *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). This is especially true considering the Sheriff's inability to exercise discretion in assessing the fee under the statute. *See id*. Accordingly, the Court agrees that Plaintiff's claims are not properly alleged against the County Defendants, and they must be dismissed as to this Defendant.

*Conclusion*

Plaintiff has created a genuine issue of material fact as to whether Defendant Weeks violated his First and Fourth Amendment rights. Therefore, Defendant Weeks' Motion for Qualified Immunity and Summary Judgment is DENIED as to these claims. However, Plaintiff's equal protection claim against Defendant Weeks is dismissed, as he has not created a genuine issue of material fact that he received differential treatment from Defendant Weeks based on his race.

Defendant Weeks' Motion for Qualified Immunity [66] is GRANTED in part, and DENIED in part.

Defendant Lee County's partial Motion for Judgment on the Pleadings [69] is GRANTED, as Plaintiff has not properly alleged that the County may be held liable under the relevant precedent for charging fees made mandatory under state statute. However, Lee County did not move for summary adjudication of the Plaintiff's other Constitutional claims, and thus Lee County shall remain a party in this litigation.

The Plaintiff's Motion to Consider Additional Authority [83] is GRANTED.

SO ORDERED this the 23rd day of May, 2018.

/s/ Sharion Aycock
UNITED STATES DISTRICT COURT